MRS. EDWARD T. CLARK, Appellant, v. EMMA JOSEPHINE LANGERAK et al., Appellees.

MARCH 13, 1928.

*Dick Van Zante, McCoy & McCoy,* and *C. Ver Ploeg,* for appellant.

*G. G. Gaass* and *Devitt & Eichhorn,* for appellees.

ALBERT, J.—A somewhat extended statement of the facts in this case is necessary to a fair understanding of the questions raised.

P. H. Bosquet and I. M. Earle were partners, Bosquet residing at Pella, and Earle at Des Moines, Iowa. The partnership was interested in and owned numerous tracts of real estate, both farm and town property, and also had numerous other in-

terests in various enterprises. Bosquet died February 14, 1908, leaving a will, by the terms of which he devised and bequeathed all of his property to his wife, Emma Bosquet. On February 19, 1908, Emma Bosquet entered into a written agreement with I. M. Earle, by which she was substituted as a partner with Earle in all of the partnership business of Bosquet & Earle. The Bosquets had three children, and on January 6, 1910, Emma Bosquet executed a trust deed to her three daughters, by which she conveyed all of her property to them as trustees. In this trust deed she made certain bequests to named parties, to be paid by the trustees, and provided that the trustees were to support and maintain the said Emma Bosquet during her life time; and at her death, and after the bequests named therein had all been paid, these trustees were to deed the property to themselves, as individuals, share and share alike. The trustees then took the place of their mother in the Bosquet & Earle partnership, I. M. Earle in writing having consented to the provisions of the foregoing trust deed with regard to said partnership and tenancy in common, and agreed thereto.

It appears that among other industries in which this firm was interested were the Anchor Brick & Tile Company and the Rock Island Cement & Plaster Company, the former company having issued bonds in the amount of $25,000, and the latter, in the amount of $30,000. These bonds became due, and the holders thereof, including the Oskaloosa National Bank, turned the same over to one C. E. Lofland, as trustee; and as such, Lofland instituted an action in 1922 in the district court of Marion County, to recover thereon, in which action the defendants named in this case, aside from the executors, were made defendants. Lofland caused attachment to be issued therein, and levied on certain of the trust property which it was claimed originally belonged to the Bosquet estate. The three daughters, as trustees, made settlement of that case by a written agreement, by the terms of which, as trustees, they turned over to Lofland, as trustee, certain real estate and personal property which formerly belonged to the Bosquet estate, with authority on the part of Lofland, as trustee, to sell and dispose of the same, and to apply the proceeds on the claims which were the basis of the action which he had instituted. The property thus transferred to Lofland as trustee did not cover all of the property that the

daughters held in trust. Pursuant to such authority, Lofland, as trustee, disposed of certain of the property thus transferred to him, and applied a part of the proceeds to the indebtedness which he held as trustee.

At the time of the probate of the Bosquet will, his wife, Emma, was appointed executrix, and on February 14, 1908, she filed certain reports therein. She listed certain debts against the estate, amounting to $215,000, plaintiff's notes not being included therein. In connection therewith, she filed a written statement as follows:

"None of these claims will be filed against the estate, as I have executed agreements that I, being the sole heir, and the only executrix of the late P. H. Bosquet, will continue the various partnerships of my late husband, and hold myself responsible for all his legitimate debts, and also holding myself responsible for all his guarantees."

Plaintiff in the present action makes claim under three promissory notes, described as follows: One note, dated December 1, 1911, for $4,000, made by the Mackeye Lumber Company to Bosquet & Earle, of which note the plaintiff claims to be the owner, said note, when transferred to plaintiff, being guaranteed by Bosquet & Earle; another note of the same date, for $2,000, given by the same parties, with the same guarantee; a third note, dated October 28, 1916, for $7,058.82, payable to the plaintiff, and signed by Bosquet & Earle. It might be noted, in passing, that each of these three notes was given after the death of P. H. Bosquet, and after the deed of trust by Emma Bosquet to her daughters.

It is sought in this equity action to obtain judgment on these three notes, and to decree a lien against the property in the hands of Lofland, as trustee, and that the three daughters, as trustees, and Lofland, as trustee, be decreed to hold said property in trust for the payment of the sum due the plaintiff, and that the trust agreement to Lofland be decreed null and void, and that Lofland be held to hold said property and the proceeds thereof subject to the indebtedness due the plaintiff, and that an accounting be had, as against the daughters, as trustees, and Lofland, as trustee.

The trust deed executed by the three daughters, as trustees, to Lofland, as trustee, specifies that the property thus trusted

is for the purpose of taking care of the bonds of the Anchor Brick & Tile Company and the Rock Island Cement & Plaster Company. At the time of the .institution of this action, I. M. Earle was deceased, and his estate was in the process of settlement. Some years previous, Emma Bosquet died, and her estate was also still in process of settlement. None of the above facts are in dispute; and under this set of facts, we are unable to discover how the plaintiff is entitled to the relief for which she prays in her petition.

As above set out, the three notes upon which plaintiff seeks to recover were not executed by the original firm of Bosquet & Earle. This must be so, because they all bear date subsequent to the death of P. H. Bosquet. The two notes dated December 1, 1911, which were guaranteed by Bosquet & Earle, must have been executed after Emma Bosquet executed the trust deeds to all of this property to her daughters, and therefore the members of the partnership of Bosquet & Earle, at the time of the guaranteeing of these notes, must have been the three daughters, as trustees, on one part, and I. M. Earle, on the other; and this must have been the partnership at the time of the execution of the plaintiff's note dated October 28, 1916.

The fighting ground in this case, as disclosed by the briefs and arguments, is over the property that went into the hands of Lofland, as trustee; and to this we will direct our attention. This is not a creditor's bill, but is a direct action in equity, to impress an alleged lien on the property received by Lofland, as trustee, and the proceeds thereof still in his hands. By what means or method it can be claimed that a lien existed herein is beyond our comprehension.

Lofland's situation, as representing the holders of the bonds of the aforesaid company, is simply that of an agent, to collect an indebtedness. By contract with the three daughters, as trustees, certain property was turned over to him, to be disposed of for the payment of the indebtedness which he held. It is not claimed that this transfer was fraudulent, nor could it be so claimed. There was other property left in the hands of the original trustee, and, so far as the record shows, the plaintiff was not in any way prejudiced or harmed by the turning over of this property to Lofland, as trustee. It was trusteed to him for the specific purpose of paying off the bond indebtedness of

these two corporations. The plaintiff was not included as a beneficiary under that trust, and we are, therefore, unable to see how she could claim or ask to have a lien established in her behalf against the property or the proceeds thereof in the hands of Lofland, as trustee.

It is argued for her, however, that, under the guaranty which Emma Bosquet made in her report, that she would answer for all debts and guaranties of P. H. Bosquet, therefore the debt of the plaintiff was included therein. To plaintiff's claim there are two answers: One, that Emma Bosquet is dead, and her estate is in process of probate, and if she were personally liable to plaintiff, plaintiff's remedy would be in probate court; and second, an all-sufficient answer is that the indebtedness on which plaintiff now seeks to recover was not in existence at the time Emma Bosquet made this written statement.

Neither the executor of the estate of Emma Bosquet nor that of I. M. Earle is made a party defendant herein. We are unable to see how the plaintiff, under these circumstances, is entitled to any relief whatever herein. This was the conclusion reached by the district court.—*Affirmed.*

STEVENS, C. J., and FAVILLE, DE GRAFF, and MORLING, JJ., concur.